Judy Alexander #116515
Law Office of Judy Alexander
2302 Bobcat Trail
Soquel, CA 95073
(831) 462-1692

Thomas R. Burke #141930
Davis Wright Tremaine LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6552
Telefax: (415) 276-4852

Attorneys for the Center for Investigative Reporting

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE APPLICATION FOR EXEMPTION FROM ELECTRONIC PUBLIC ACCESS FEES BY JENNIFER GOLLAN AND SHANE SHIFFLETT OF THE CENTER FOR INVESTIGATIVE REPORTING, INC., A 501(c)(3) NONPROFIT ORGANIZATION | CASE NO. 12-80113 (JW) MISC.<br><br>RENEWED APPLICATION FOR EXEMPTION FROM PACER FEES |

The Center for Investigative Reporting ("CIR") is an educational and charitable section 501(c)(3) nonprofit organization in California dedicated to public education and engagement through investigative and enterprise reporting. In accordance with the Electronic Public Access Fee Schedule ("Fee Schedule") and the Judicial Conference Policy Notes ("Policy Notes") set forth in Exhibit A attached to this application, CIR moves the Court to grant an exemption from the fees imposed for public access to the PACER system in the Northern District of California. The requested exemption is quite narrow. It would only exempt CIR reporters Jennifer Gollan ("Gollan") and Shane Shifflett ("Shifflett"), would be very limited in time (from May 2012 to

September 2012), and would only apply to a single research project intended to promote public access to information, educate the public about the federal courts and the effectiveness of their conflicts of interest technology, and increase the public's understanding of the federal judiciary and its commitment to accountability.

## I. FACTUAL BACKGROUND

On March 19, 2012 Gollan and Shifflett, then reporters for The Bay Citizen ("TBC"), a charitable and educational 501(c)(3) nonprofit organization in California, submitted an application for exemption from the fees imposed for public access to the PACER system, limited to their work on a specific project and also limited in time. The Court granted their application on March 21, 2012. On or before April 10, 2012, it came to the Court's attention that Gollan and Shifflett may be "members of the media" ineligible for a PACER fee exemption under the Policy Notes provision directing Courts not to exempt certain groups including "members of the media." The Court scheduled a hearing for April 30, 2012 to address this issue. Effective on the date of the hearing TBC merged with and into CIR, and Gollan and Shifflett became employees of CIR. Thus, counsel for CIR and Gollan and Shifflett appeared at the hearing, where the Court and counsel agreed it would be appropriate for Gollan and Shifflett to file a renewed application for exemption and for the existing exemption to be suspended pending the Court's consideration of the renewed application. On April 30 the Court issued an order to that effect.

## II. GOOD CAUSE EXISTS FOR RE-INSTATING THE EXEMPTION

The Fee Schedule authorizes exemptions from payment of fees for access to the PACER database, upon a showing of cause, for the following groups: "indigents, bankruptcy case trustees, researchers associated with educational institutions, courts, section 501(c)(3) not-for-profit organizations, court appointed pro bono attorneys, and pro bono ADR neutrals." Because CIR has been classified by the IRS as a section 501(c)(3) not-for-profit organization since May 1978, it is part of a group eligible for exemption upon a showing of cause. The Fee Schedule

dictates that to show good cause for an exemption, the applicant must demonstrate "that an exemption is necessary in order to avoid unreasonable burdens and to promote public access to information." CIR can show good cause based on the following:

Gollan and Shifflett have been conducting, and intend to continue to conduct, original and comprehensive empirical research analyzing the effectiveness of the conflict-checking software and hardware used by the California federal courts to help federal judges identify situations requiring their recusal. The research study will cross reference court records available through PACER against separate data sets, such as judges' statements of economic interest. By harvesting dockets from PACER and analyzing their grammatical patterns, Gollan and Shifflett will design processes that classify documents and search them for context. This project requires access to PACER records in the Northern District of California.

This in-depth statistical study will entail accessing and reviewing hundreds of lengthy civil complaints and other PACER records at an anticipated cost of many thousands of dollars. The burden of the anticipated PACER fees expense is prohibitive for CIR, whose funding is both limited and wholly dependent on foundation grants and donations. Without an exemption from PACER fees, CIR will not be able to access the federal court records necessary to complete this study, depriving the public of important information about the workings of the federal courts and the recusal process.

Because Gollan and Shifflett will prepare reports based on their research and study, and CIR will widely distribute these reports throughout California, granting this exemption will promote public access to information, educate the public about the federal courts and their handling of conflicts of interest, and increase the public's understanding of the federal judiciary and its commitment to accountability. This could lead to increased public trust in the legal system by providing greater transparency into the recusal process arising from financial conflicts of interest.

## III. REPORTERS FOR THE CENTER FOR INVESTIGATIVE REPORTING, INTO WHICH THE BAY CITIZEN HAS MERGED, ARE NOT PRECLUDED FROM OBTAINING A PACER FEE EXEMPTION

### A. CIR WAS FORMED AND OPERATES FOR EDUCATIONAL PURPOSES

CIR was granted section 501(c)(3) tax exempt status in 1978, because it was organized and has always been operated for educational and charitable purposes. [1] CIR achieves those purposes primarily, but not exclusively, through the vehicle of journalism. CIR's Articles of Incorporation explain its raison d'etre:

> "The specific and primary purposes of this corporation are to engage in charitable and educational activities . . . including but not limited to the following activities:
> 1) To conduct research on important contemporary social, political, and economic issues and to use on-line and traditional media forms to disseminate results obtained through the production of news articles and other printed materials to further public knowledge and understanding of these important issues;
> 2) To educate the general public and promote free speech and democracy through the publication of high quality, non-partisan journalism . . .."

"On Shaky Ground," a recent series produced by CIR, illustrates the breadth of CIR's educational activities. In 2009 a CIR reporter was given a simple assignment to write about seismic safety at California schools keyed to the 20th anniversary of the Loma Prieta earthquake. However, reporter Corey Johnson discovered a staggering regulatory failure—thousands of school buildings being occupied even though they did not meet seismic safety standards. Bad inspectors missed major defects or falsified reports, while being rewarded with more work. And the state made it practically impossible for schools to get access to available seismic repair money. The original "simple assignment" turned into a nineteen month investigation. CIR distributed in early April 2011 the original three-part "On Shaky Ground" series to every major media market in the state, from California's largest daily newspapers to television, radio, and the

[1] TBC also was granted section 501(c)(3) tax exempt status, because it was organized and operated for educational and charitable purposes.

web. The stories were translated into Spanish, Korean, Chinese and Vietnamese and distributed by the ethnic media. Based on circulation numbers and TV and radio audience size, "On Shaky Ground" reached more than 7 million people over the course of three days. Key follow-up stories were distributed throughout the remainder of 2011.

However, CIR did not stop there. It went to great lengths to engage the public and raise awareness about the importance of earthquake preparedness. For young school children, CIR created and produced an earthquake safety coloring book in five languages and distributed more than 36,000 copies at no charge to schools. For parents, it compiled an interactive database featuring every public K-12 school in the state, allowing parents to see if their child attends a school near faults or with seismically unsafe buildings. CIR assembled safety packets with whistles and ID cards and handed them out at community events throughout the state. It also built an iPhone app enabling users to pinpoint quake faults near them. The app also includes earthquake preparation checklists and a flashlight.

The positive impact of "On Shaky Ground" has been enormous:

- Shortly after the initial stories were distributed, legislators voted to audit the office that oversees public school construction in California.
- Regulators vowed to adopt every safety recommendation in the audit report.
- New state standards were created making it possible for schools with known seismic hazards to tap into a $200 million repair fund.
- A series of policy changes ensured more safety oversight of school project and created more accountability measures for safety inspectors.
- Some school officials took matters into their own hands. Superintendents shut down buildings after learning about potential dangers as a result of the series.

CIR's comprehensive educational efforts are what support its status as a section 501(c)(3) nonprofit organization.

B. THE FEE SCHEDULE AND POLICY NOTES DO NOT PROHIBIT GRANTING THE REQUESTED EXEMPTION

As noted above, the Fee Schedule authorizes exemptions from payment of fees for access to the PACER database, upon a showing of cause, for the following groups: "indigents, bankruptcy case trustees, researchers associated with educational institutions, courts, section 501(c)(3) not-for-profit organizations, court appointed pro bono attorneys, and pro bono ADR neutrals." On the other hand the Policy Notes direct courts not to exempt "government agencies, members of the media, attorneys or others *not members of one of the groups listed"* in the Fee Schedule exemption provisions ("Exemption Provisions") (emphasis supplied). When parsed carefully, it is clear that those not to be exempted under the Policy Notes are only those who are not a member of any of the groups listed in the Exemption Provisions.

For example, the Policy Notes direct courts not to exempt attorneys, but clearly this does not apply to all attorneys because the Exemption Provisions explicitly authorize exemptions for court appointed pro bono attorneys. It follows that while the Policy Notes state that exemptions should not be granted to members of the media, this prohibition should not apply to members of the media who are part of section 501(c)(3) nonprofit organizations.

**IV. CIR AND ITS REPORTERS ACKNOWLEDGE AND AGREE TO THE REQUIRED LIMITATIONS**

CIR and its reporters understand and agree that the fee exemption (i) will apply only apply to Gollan and Shifflett, (ii) will be valid only for the research study described above, and (iii) will apply only to the electronic case files of this court that are available through PACER. While the research study may yield published reports, CIR and its reporters agree not to use the raw data obtained through the fee exemption for commercial purposes or Internet redistribution, and not to transfer any of the data unless authorized by the Court.

## V. CONCLUSION

For all the reasons stated above, CIR respectfully asks the Court to grant the requested exemption.

Dated: May 8, 2012.

Respectfully submitted,

LAW OFFICE OF JUDY ALEXANDER
JUDY ALEXANDER #116515
2302 Bobcat Trail
Soquel, CA 95073

By ____________________
Judy Alexander
Attorney for the Center for Investigative Reporting

# EXHIBIT A

## ELECTRONIC PUBLIC ACCESS FEE SCHEDULE

(Eff. 4/1/2012)

### ELECTRONIC PUBLIC ACCESS FEE SCHEDULE

*(Issued in accordance with 28 U.S.C. § 1913, 1914, 1926, 1930, 1932)*

As directed by Congress, the Judicial Conference has determined that the following fees are necessary to reimburse expenses incurred by the judiciary in providing electronic public access to court records. These fees shall apply to the United States unless otherwise stated. No fees under this schedule shall be charged to federal agencies or programs which are funded from judiciary appropriations, including, but not limited to, agencies, organizations, and individuals providing services authorized by the Criminal Justice Act, 18 U.S.C. § 3006A, and bankruptcy administrator programs. Furthermore, the fee increase from eight cents per page to ten cents per page has been suspended for local, state, and federal government entities until 4/1/2015.

I. For electronic access to court data via a federal judiciary Internet site: ten cents per page, with the total for any document, docket sheet, or case-specific report not to exceed the fee for thirty pages– provided however that transcripts of federal court proceedings shall not be subject to the thirty-page fee limit. For electronic access to an audio file of a court hearing via a federal judiciary Internet site: $2.40 per audio file. Attorneys of record and parties in a case (including pro se litigants) receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. No fee is owed under this provision until an account holder accrues charges of more than $15 in a quarterly billing cycle. Consistent with Judicial Conference policy, courts may, upon a showing of cause, exempt indigents, bankruptcy case trustees, individual researchers associated with educational institutions, courts, section 501(c)(3) not-for-profit organizations, court appointed pro bono attorneys, and pro bono ADR neutrals from payment of these fees. Courts must find that parties from the classes of persons or entities listed above seeking exemption have demonstrated that an exemption is necessary in order to avoid unreasonable burdens and to promote public access to information. For individual researchers, courts must also find that the defined research project is intended for academic research, and not for commercial purposes or internet redistribution. Any user granted an exemption agrees not to sell for profit the data obtained as a result. Any transfer of data obtained as the result of a fee exemption is prohibited unless expressly authorized by the court. Exemptions may be granted for a definite period of time and may be revoked at the discretion of the court granting the exemption.

II. For printing copies of any record or document accessed electronically at a public terminal in the courthouse: ten cents per page. This fee shall apply to services rendered on behalf of the United States if the record requested is remotely available through electronic access.

III. For every search of court records conducted by the PACER Service Center, $26 per name or item searched.

IV. For the PACER Service Center to reproduce on paper any record pertaining to a PACER account, if this information is remotely available through electronic access, 50 cents per page.

V. For a check paid to the PACER Service Center which is returned for lack of funds, $45.

### JUDICIAL CONFERENCE POLICY NOTES

Courts should not exempt local, state or federal government agencies, members of the media, attorneys or others not members of one of the groups listed above. Exemptions should be granted as the exception, not the rule. A court may not use this exemption language to exempt all users. An exemption applies only to access related to the case or purpose for which it was given. The prohibition on transfer of information received without fee is not intended to bar a quote or reference to information received as a result of a fee exemption in a scholarly or other similar work.

The electronic public access fee applies to electronic court data viewed remotely from the public records of individual cases in the court, including filed documents and the docket sheet. Audio files of court hearings do not include naturalization ceremonies or appellate oral arguments. Electronic court data may be viewed free at public terminals at the courthouse and courts may provide other local court information at no cost. Examples of information that can be provided at no cost include: local rules, court forms, news items, court calendars, opinions, and other information – such as court hours, court location, telephone listings – determined locally to benefit the public and the court.

(Eff. 4/1/2012)